UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCHES OF: <br><br> VIOFO A129 PLUS QUAD HD DASHBOARD CAMERA – SERIAL NUMBER: A129PLUS20491156 <br><br> AND <br><br> BLACK AND SILVER GO PRO HERO 3 – SERIAL NUMBER: HD3WA06, <br><br> BOTH IN NATIONAL PARK SERVICE POLICE CUSTODY, RAPPAHANNOCK COUNTY, VIRGINIA | Case No. 5:21mj00040 |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Kathryn Yody, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of a certain electronic device, more fully described below and in Attachment A, which is currently in law enforcement possession, and the extraction from this device of electronically stored information described more fully herein and in Attachment B.

2. I am a federal law enforcement officer with the National Park Service and have been since May 2017. I am currently assigned to Shenandoah National Park, which is located within the Special Maritime and Territorial jurisdiction of the United States, specifically, federally exclusive jurisdiction in the Western District of Virginia. I am a graduate of Temple University's

Law Enforcement Training Program (2016) and the Land Management Police Training Program at the Federal Law Enforcement Training Center (2019).

3. I have received extensive training in the detection and investigation of individuals suspected of motor vehicle crashes and motor vehicle traffic offenses. I completed trainings for traffic collision investigation, digital evidence, crime scene processing, electronic sources of information for law enforcement, and electronic law and evidence at the Federal Law Enforcement Training Center in 2019. I have conducted numerous motor vehicle crash investigations on Skyline Drive. I conduct traffic safety enforcement and traffic law as a regular part of my job.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5. The property to be searched is as follows:

   a. **VIOFO A129 Plus Quad HD Dashboard Camera (SN: A129PLUS20491156) (Target Device #1)**. The dashboard camera contains a Samsung 128 Pro Micro SD memory storage card. The dashboard camera was recovered on September 18, 2021 by National Park Service Law Enforcement Rangers, from the front windshield of a Blue Subaru WRX (VA: Z00MES) vehicle occupied by **Drake Anthony DOSS ("DOSS")** and was seized as evidence pursuant to reckless driving and motor vehicle crash investigation. The camera is currently in the custody of the National Park Service at Shenandoah National Park within the Western District of Virginia.

b. **Black and Silver Go Pro Hero 3 (SN: HD3WA06)** (**Target Device #2**) (collectively, the **Target Devices**). The Go Pro camera contains a SanDisk Ultra 64GB Micro SD memory storage card. The Go Pro camera was recovered on September 18, 2021 by National Park Service Law Enforcement Rangers, from the front windshield of a black and white 2004 Subaru WRX (VA: SH1BUYA) vehicle occupied by **Xachary Nathaniel WHITEHURST ("WHITEHURST")** and was seized as evidence pursuant to reckless driving and motor vehicle crash investigation. The camera is currently in the custody of the National Park Service, at Shenandoah National Park within the Western District of Virginia.

## STATEMENT OF PROBABLE CAUSE

6.  On Friday September 18, 2021 at approximately 1902 hours, I received a report of a motor vehicle crash on Skyline Drive south of the Elkwallow Wayside from a Shenandoah National Park employee. Two vehicles were involved in the crash. One of the vehicles was off the roadway, down the embankment. One male had a significant head injury with bleeding from one vehicle. There was a 7-week-old infant in the other involved vehicle reported to have an increased respiratory rate with labored breathing from the other vehicle.

7.  I arrived on scene at approximately 1921 hours. I observed a white Toyota Prius with significant damage to the front passenger corner of the vehicle. I observed a silver convertible rolled onto its side, down the embankment, off the roadway. I identified the occupant of the silver 2004 Mazda Miata convertible (VA: MX5PEED) as **Jhordyz Marchel RODRIGUEZ VILLATROR (Driver 1, herein "D1").** D1 was the only occupant within the silver Mazda. D1 had a significant head injury with a large bump and swelling to the left side of his head.

3

8. D1 stated a squirrel was in the roadway which caused him to swerve. He stated he did not want to hit the squirrel because he was afraid it would have then flown into his convertible. D1 denied exceeding the posted speed limit, passing other vehicles, or racing when I questioned him numerous times.

9. I observed three additional sports cars parked near the crash scene. Earlier on September 18, 2021, I observed all the same vehicles traveling as a group on Skyline Drive. The group of cars were traveling southbound and pulled into Hogwallow Flats Overlook. I frequently have issues and incidents related to car clubs driving recklessly and at high rates of speed as a group on Skyline Drive.

10. I identified a witness (W1) to the crash who was driving southbound on Skyline Drive at Mile Marker 25 in his silver Cadillac sedan with Virginia registration. I asked W1 what he observed, and he stated as he was traveling southbound on Skyline Drive. He observed a dark in color sports car come up behind him at a high rate of speed. W1 estimated approximately 65-70 miles per hour as he was traveling 35-40 miles per hour. The dark in color sports car then got into the opposing traffic lane to pass W1 in his silver Cadillac sedan. W1 then observed the silver Mazda convertible also traveling at a high rate of speed southbound behind him. W1 reports the silver Mazda convertible then attempted to pass W1 just as the dark in color sports car did before. As the silver Mazda was attempting to overtake W1's silver sedan, it lost control and swerved into the oncoming traffic lane, crashing into a white Prius, continuing off the roadway, and then down the embankment.

11. I contacted the operator of the second vehicle involved in the crash, Driver 2 (herein "D2"), identified by his Virginia driver's license. D2 was driving a white Toyota Prius (VA: CT5723). D2 stated he was driving northbound on Skyline Drive when he observed a group of

4

sports cars traveling at high rates of speed. He observed vehicles in the oncoming traffic lane and thought the vehicles may be racing. D2 observed a black in color vehicle pass a vehicle in the southbound lane and then pass by his vehicle. D2 observed another vehicle swerving out of control coming towards his vehicle. D2 stated he stopped his vehicle in the roadway to try to avoid being hit. D2 stated the silver convertible hit the front passenger side of his Toyota Prius. All the airbags deployed in the white Prius. D2's wife and his 7-week-old daughter were also within the vehicle at the time of the crash.

12. As of September 27, 2021, D2 is suffering from pain and bruising to his legs. D2 is suffering from bruising and pain to his left arm. D2's wife is suffering from pain to her lower abdomen and stomach. D2's 7-week-old daughter is currently being tested for any medical issues due to the crash.

## Recovery of the Target Devices

13. During the investigation of the crash, I encountered the drivers of the three additional sports cars parked near the crash scene.

14. I identified DOSS as one of the individuals involved within the car club. DOSS was operating a blue Subaru WRX (VA:Z00MES) and was traveling as a group with the other associated vehicles. DOSS had a black VIOFO A129 Plus Quad HD Dashboard Camera (SN: A129PLUS20491156) on the front windshield of his vehicle (**Target Device #1**).

15. I identified WHITEHURST as one of the individuals involved within the car club. WHITEHURST was operating a black and white 2004 Subaru WRX (VA:SH1BUYA) and was traveling as a group with the other associated vehicles. WHITEHURST had a black and silver Go Pro HERO 3 (SN: HD3WA06) within his vehicle (**Target Device #2**).

5

16.     Based on my knowledge, training and experience, it appears D1 was traveling significantly over the posted 35 mile per hour speed limit while traveling southbound on Skyline Drive at Mile Marker 25 as a group with additional sports cars, to include WHITEHURST and DOSS. D1 attempted to pass a vehicle in the southbound lane by entering the opposing traffic lane. While attempting to complete the pass, D1 failed to maintain control of the vehicle. D1 swerved into the oncoming traffic lane and stuck the stationary white Toyota Prius (D2) on the front passenger side. D1's silver Mazda convertible continued to travel off the roadway, down the embankment, rolling onto the driver's side until it was stopped by a tree.

17.     Based on your affiant's training and experience, your affiant knows that people who commit crime often use their electronic devices including cameras in ways that reveal their location and/or activities before, after, or while engaging in criminal activity. For example, this may include location information (e.g., GPS data) and images or video recordings relevant to the criminal activity.

18.     Your affiant believes that probable cause exists that concealed within the Target Device #1 and Target Device #2, there are files evidencing reckless driving- endangering life and limb, exceeding the posted speed limit, unsafe operations, racing, improper passing, etc. in the photos and videos stored on the camera device.

19.     Target Device #1 and Target Device #2 are currently in the lawful possession of the National Park Service Law Enforcement Rangers.  It came into the NPS's possession in the following way: Target Device #1 was recovered on September 18, 2021 by the National Park Service, from DOSS and was seized as evidence pursuant to reckless driving, racing, unsafe operations and motor vehicle crash investigation.  Target Device #2 was recovered on September 18, 2021 by The National Park Service, from WHITEHURST and was seized as evidence pursuant

6

to reckless driving, racing, unsafe operations and motor vehicle crash investigation. Target Device #1 and Target Device #2 are currently in the custody of the Piney River Ranger Station, which is in Rappahannock County, VA within the Western District of Virginia. In my training and experience, I know that the Target Device #1 and Target Device #2 have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when they first came into the possession of the National Park Service Law Enforcement Rangers.

## TECHNICAL TERMS

20. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. *Digital camera:* A digital camera is a camera that records pictures and videos as digital picture and video files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

    b. *GPS:* A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

    c. *IP Address:* An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

    d. *Internet:* The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

21. Based on my training, experience, and research, I know that the devices described in Attachment A have capabilities that allow them to serve as a digital camera, digital recorder, GPS Navigation. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

22. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.

23. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the devices because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted

8

portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

24. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but

9

not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it contains evidence described by the warrant.

25.   *Manner of execution.*   Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

26.   I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the devices described in Attachment A, in order to seek the items described in Attachment B.

## OATH

The information in this affidavit is true to the best of my knowledge and belief.

Respectfully submitted,

*s/Kathryn Yody*
Kathryn Yody, U.S. Park Ranger
National Park Service

Received by reliable electronic means and sworn and attested to by telephone on this 19th day of October 2021.

JOEL C. HOPPE
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

1. The property to be searched is as follows:

    a. **VIOFO A129 Plus Quad HD Dashboard Camera (SN: A129PLUS20491156) (Target Device #1)**. The dashboard camera contains a Samsung 128 Pro Micro SD memory storage card. The dashboard camera was recovered on September 18, 2021 by National Park Service Law Enforcement Rangers, from the front windshield of a Blue Subaru WRX (VA: Z00MES) vehicle occupied by **Drake Anthony DOSS** and was seized as evidence pursuant to reckless driving and motor vehicle crash investigation. The camera is currently in the custody of the National Park Service at Shenandoah National Park within the Western District of Virginia.

# ATTACHMENT B

1. All records on the Device described in Attachment A that relate to violations of 36 CFR 4.2 VA 46.2-852. Reckless driving, 36 CFR 4.21 (c). Exceeding posted speed limit, 36 CFR 4.22(b)(3) Unsafe Operations, 36 CFR 4.2 VA 46.2-865 Racing, contest of speed between two or more motor vehicles and involving: **Jhordyz Marchel RODRIGUEZ VILLATROR** since September 18, 2021, including:

    a. images or video recordings
    b. location information (e.g., GPS data)